IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| RANDY ANDREW, | HONORABLE WILLIAM H. WALLS |
|---|---|
| Petitioner, | |
| v. | Civil Action No. 14-6673 (WHW) |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondent. | |

APPEARANCES:

RANDY ANDREW
No. 63915-050
FCI – Gilmer, P.O. Box 6000
Glenville, West Virginia 26351-6000
    Petitioner, appearing *pro se*

JUSTIN S. HERRING, Esq.
THOMAS J. EICHER, Esq.
United States Attorney's Office
970 Broad Street, Suite 700
Newark, New Jersey 07102
    Attorneys for Respondent United States of America

**WALLS, Senior District Judge:**

I.    **INTRODUCTION**

On June 28 and July 1, 2013, after a four-day trial, a jury convicted Petitioner Randy Andrew ("Petitioner") of various charges, detailed *infra*, related to his possession and trafficking of firearms. (*See, e.g.*, Oct. 1, 2013 Crim. J. in *United States v. Andrew*, No. 2:12-cr-768-1 (the "Criminal Docket") at ECF No. 73.) On September 18, 2013, this Court sentenced Petitioner to a term of imprisonment of 120 months. (*See, e.g., id.*) Petitioner now moves to vacate, correct,

or set aside his federal sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the Court will deny the motion, and will not issue a certificate of appealability.

## II. BACKGROUND

On May 17, 2013, Petitioner was formally charged in a five-count superseding indictment with: (i) one count of trafficking firearms without a license, 18 U.S.C. § 922(a)(1)(A); (ii) one count of conspiring to traffic firearms without a license, 18 U.S.C. § 371; and (iii) three separate counts of being a felon in possession of a firearm on the dates of May 11, May 19, and June 9, 2010, in violation of 18 U.S.C. § 922(g)(1). (*See* Criminal Docket at ECF No. 57.)

Petitioner's trial began on June 25, 2013. (*See* June 25, 2013 Trial Tr., Criminal Docket at ECF No. 76.) Petitioner was initially represented by Paul J. Casteleiro, Esq. At the beginning of the third day of trial on June 27, 2013, Petitioner made a formal request to represent himself and act as his own attorney for the remainder of his trial, with Mr. Casteleiro serving as stand-by counsel. (*See* June 27, 2013 Trial Tr. 3-10, Criminal Docket at ECF No. 78.) Petitioner was clear that Mr. Casteleiro had "done very well" and that this request was the result of Mr. Casteleiro's strategic decisions to not "bring certain things out" at trial due to the potential adverse impact that information would have on Petitioner's defense; Petitioner, on the other hand "want[ed] everything to come out, not to be used as strategy." (*Id.* at 7-8.) The Court – after cautioning Petitioner against proceeding *pro se* – granted Petitioner's request. (*Id.* at 7-14.) Petitioner served as his own counsel for the duration of the trial, which concluded on July 1, 2013.

The evidence presented at trial inculpating Petitioner was overwhelming. That evidence included the testimony of: (i) Sydney Trottman, who purchased upwards of fifty guns from various individuals – including three from Petitioner – over a three-year period during which he

was acting as a confidential informant on behalf of the Government (*see* June 26, 2013 Trial Tr. 45-102, Criminal Docket at ECF No. 77; June 27, 2013 Trial Tr. 17-60); (ii) Federal Bureau of Investigation ("FBI") Officer Augoustis Karaminas, who served as Sydney Trottman's point of contact at the FBI during Mr. Trottman's roughly three-year period of cooperation (*see* June 25, 2013 Trial Tr. 17-99; June 26, 2013 Trial Tr. 3-40); and (iii) one of Petitioner's co-conspirators, Peter Stewart, who helped facilitate the foregoing firearms sales to Mr. Trottman. (*See* June 27, 2013 Trial Tr. 60-106). All three witnesses provided compelling testimony demonstrating that Petitioner, among other things, sold Mr. Trottman: (i) a Universal Enforcer .30 caliber semi-automatic assault rifle on May 11, 2010; (ii) a Norinco MAK-90 7.62 millimeter assault rifle on May 19, 2010; and (iii) a Lorcin .38 caliber semi-automatic handgun on June 9, 2010. Michael Puskas, a special agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives, also testified on behalf of the Government. (*See* June 27, 2013 Trial Tr. 106-133, Criminal Docket at ECF No. 78.) Special Agent Puskas testified, *inter alia*, about Petitioner's lack of licensure to sell those firearms. (*Id.* at 117.)

The jury also viewed audio/visual recordings produced from covert surveillance equipment worn by Mr. Trottman each time Petitioner sold him a firearm. (*See, e.g.*, June 27, 2013 Trial Tr. 18-87.) The events depicted in those audio/visual recordings were fully consistent with the testimony of Messrs. Karaminas, Trottman, and Stewart and otherwise convincingly demonstrated, among other things, Petitioner's clear and direct involvement in the sales of three firearms to Mr. Trottman on May 11th, May 19th, and June 9th. The evidence presented at trial further demonstrated that Petitioner thought the guns he sold to Mr. Trottman were purchased for a Jamaican crime lord named Dukus "to fight [a drug] war in Jamaica." (*See, e.g.*, June 26, 2013 Trial Tr. 55-56.)

In addition to this highly incriminating evidence, during his *pro se* cross-examination of Messrs. Trottman and Stewart, Petitioner readily and repeatedly acknowledged that he sold guns to Mr. Trottman on multiple occasions. (*See*, e.g., June 27, 2013 Trial Tr. 38 (Petitioner asking Mr. Trottman "How much money were you supposed to give me on May 19th for [the MAK-90] assault weapon?"); *id.* at 102 (Petitioner, during his cross-examination of Mr. Stewart, indicating that he himself "received five hundred dollars" for the May 11th assault rifle sale); *see also id.* at 103-04 (Court cautioning Petitioner that "in the course of serving as [his] own attorney . . . [y]ou are incriminating yourself and you're doing it willingly . . . .").)

In that regard, Petitioner's defense strategy appeared to be based on the legally incorrect premise that although Petitioner undisputedly sold guns to Mr. Trottman on three occasions without any license to do so, he was not guilty of the gun trafficking and felon in possession of firearm charges for which he stood trial because he only sold those firearms in response to the requests of Mr. Trottman, who, in turn, purchased those weapons at the behest of the FBI solely for the purpose of securing criminal convictions of third-parties. In other words, it appears that Petitioner mistakenly believed – and, as evidenced by the claims raised in this habeas matter, continues to believe – that because he sold those guns only after being implored to do so by Mr. Trottman – who himself was attempting to purchase those weapons for the purpose of securing criminal convictions and not for use in "real" crimes – Petitioner should have been acquitted at trial of the crimes charged against him in the May 17, 2013 superseding indictment. In that respect, the jury was instructed on – and allowed to consider whether – the defense of entrapment applied to Petitioner's case. The Court explained, *inter alia*, that:

> A defendant may not be convicted of a crime if he was entrapped by the Government to do the acts charged. The Government is permitted to use undercover agents, deception, and other means of providing opportunities for unwary criminally minded persons to commit a crime. But the law does not permit

the Government to induce an unwary, innocent person in committing a criminal offense.

(June 28, 2013 Trial Tr. 76.)

Ultimately the jury found Petitioner guilty on all five counts charged in the superseding indictment. (*See* June 28, 2013 Trial Tr. 86-100; July 1, 2013 Trial Tr. 6-9.) This was wholly unsurprising in light of the abundant evidence and testimony presented at trial inculpating Petitioner. On October 1, 2013, this Court sentenced Petitioner to 120 months' imprisonment. (*See* Oct. 1, 2013 Crim. J., Criminal Docket at ECF No. 73.)

Petitioner never filed a direct appeal. Instead, on or about October 10, 2014, Petitioner initiated the current § 2255 action *pro se*. (ECF No. 1.) Petitioner thereafter submitted several supplemental filings containing the relevant habeas claims that are presently before the Court. (*See* Pet'r's July 13, 2016 Am. § 2255 Mot., ECF No. 7; Pet'r's Jan. 4, 2017 Mot. to Supp. Pleading, ECF No. 10) (collectively, the "§ 2255 Motion"). Petitioner's § 2255 Motion advances the following arguments:

> Ground One: The prosecution team . . . [withheld] information, and impeachment evidence . . . by not disclosing impeachment evidence of audio visual DVD recording of debriefing at Stuyvesant Avenue and Mountain View Place, in Irvington New Jersey . . . .
>
> Ground Two: The government withheld evidence [of the audio visual DVD recording of agents debriefing informant at Stuyvesant Avenue And Mountain View Place in Irvington New Jersey and] the prosecution team suppressed [this] evidence that was favorable to the [Petitioner] after multiple request[s] for evidence.
>
> Ground Three: The prosecution withheld information and location [related to a] government informant moving on same street location as [P]etitioner.
>
> Ground Four: The prosecution team withheld audio visual footage [from July 15, 2010 through July 17, 2010] that coincided with [text messages introduced into evidence at trial and] were exculpatory and material . . . .

5

> Ground Five: . . . [Trial counsel] was ineffective for not requesting [ ] audio visual [DVD] debriefing of agents and informant on Stuyvesant Avenue and Mountain View Place in Irvington New Jersey. [Counsel] failed to investigate audio visual debriefing of informant which was part of the overall discovery evidence in his possession which would have helped him develop a strategy for trial.
>
> Ground Six: Ineffective assistance of counsel . . . [because counsel] did not call Mark McCargo to testify . . . to the information of [Petitioner] after [P]etitioner clearly stated that informant had been exposed in front of another coconspirator by [Petitioner] where [Petitioner] told Mark McCargo that informant was an agent of the government.
>
> Ground Seven: Ineffective assistance of counsel . . . [where Petitioner] . . . asked [trial counsel] what was meant by the term reversible error and [trial counsel] said it didn't mean anything of significance.
>
> Ground Eight: The prosecution team withheld information of Mark McCargo's arrest after multiple request[s] concerning co-conspirator's involvement with him.

(*See* Pet'r's July 13, 2016 Am. § 2255 Mot., ECF No. 7.)[1]

> Ground Nine: Petitioner's base offense level was [improperly] enhanced for a semiautomatic firearm that is [capable] of accepting a large capacity magazine and having two controlled substance offenses in 2k2.1(a)(1) . . . .
>
> Ground Ten: The definition of the federal and state drug statutes, alternative means doesn't apply to New Jersey controlled substance statutes, and violate federal law to use [unidentical] language to enhance [P]etitioner with 2k2.1(a)(1) enhancements violates due process.
>
> Ground Eleven: [Petitioner] was enhanced for conduct that is not included in the guidelines definition of a ["]controlled substance offense" under New Jersey [law] . . .

(*See* Pet'r's Jan. 4, 2017 Mot. to Supp. Pleading, ECF No. 10.)

---

[1] While Petitioner's July 13, 2016 amended § 2255 motion also includes a ninth ground for "prosecutorial misconduct and [a] speedy trial violation" (*see* ECF No. 7 at PageID: 77), Petitioner's March 22, 2018 Memorandum of Law makes clear that he has abandoned pursuit of that claim. (*See* ECF No. 17 at PageID: 131 ("The government has also added a Ninth Claim [ ], stating that [Petitioner's] rights were violated during his original calendar set for a speedy trial. The government is trying to use a claim that is NOT on [Petitioner's] revised § 2255 application[.]") (emphasis in original).)

The Government filed its answer to the foregoing claims on February 26, 2018. (ECF No. 16.) Petitioner filed a reply on or about March 22, 2018. (ECF No. 17.)

## III. DISCUSSION

### A. Legal Standard

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States[;]" (2) "that the court was without jurisdiction to impose such sentence[;]" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Because a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at 545-46. Where the record, as supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicates that petitioner is not entitled to relief as a matter of law, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United*

7

States v. Tuyen Quang Pham, 587 F. App'x 6, 8 (3d Cir. 2014); Booth, 432 F.3d at 546 (evidentiary hearing only necessary where the petitioner's claims are not conclusively resolved by the record). For the reasons explained below, the record establishes that Petitioner is not entitled to relief as a matter of law. An evidentiary hearing is therefore not required.

## B. Petitioner's Substantive Habeas Claims

### 1. Petitioner's *Mathis* Claims

In Grounds Nine, Ten, and Eleven, Petitioner challenges the propriety of the purported sentencing enhancements he believes the Court imposed in light of his two prior state felony drug convictions. (*See* ECF No. 10.) Petitioner makes clear that all three of these Grounds are premised on the Supreme Court's decision in *United States v. Mathis*, 136 S. Ct. 2243 (2016). (*See* Pet'r's Mar. 22, 2018 Memo. of Law, ECF No. 17 at PageID: 132.) These claims appear to be rooted in Petitioner's mistaken belief that he was designated as a career offender under United States Sentencing Guideline ("USSG") § 4B1.1 based on those two prior offenses. While the Court did of course account for Petitioner's criminal history in imposing an appropriate sentence, the record makes clear that the 120-month sentence imposed by this Court was in no way based on the career offender provision, USSG §4B1.1, implicated by *Mathis*. (*See, generally*, Aug. 28, 2013 Presentence Investigation Report; Sept. 18, 2013 Sentencing Tr., Criminal Docket at ECF No. 81.) Moreover, the 120-month sentence Petitioner received fell well below the 188-month to 235-month range recommended under the USSG. (*See id.*) As such, Grounds Nine, Ten, and Eleven do not entitle Petitioner to habeas relief.

### 2. Petitioner's Withholding of Evidence Claims

Grounds One, Two, Three, Four, and Eight all arise out of Petitioner's ongoing belief that the Government impermissibly withheld evidence and information from him. More specifically,

8

Petitioner claims that the Government was in possession of, and refused to produce: (i) audio/visual recordings it obtained from the covert surveillance equipment worn by Mr. Trottman (*see* § 2255 Mot. at Grounds One, Two and Four); (ii) information pertaining to the relocation of Mr. Trottman to Petitioner's street of residence (*id.* at Ground Three); and (iii) information about the arrest of Mark McCargo. (*Id.* at Ground Eight.) Mr. McCargo is a criminal defendant who admitted to this Court that on July 1, 2010, he – along with Petitioner's co-conspirators, but not Petitioner – participated in the sale of a 12 gauge Mossberg Maverick 88 shotgun and a .22 caliber Remington 550-1 semi-automatic rifle to Sydney Trottman. (*See* Apr. 24, 2012 Plea Tr. 11-12, ECF No. 12 in *United States v. McCargo*, Docket No. 12-cr-277.) Notably, Mr. McCargo disavowed knowing Petitioner during that plea colloquy. (*Id.* at 10-11.)

### a. Petitioner's Withholding of Evidence Claims Are Procedurally Defaulted

Initially, the Court notes that Grounds One, Two, Three, Four, and Eight all appear to be procedurally defaulted because none of them were asserted on direct appeal. *See Nicholas*, 759 F.2d at 1074 (3d Cir. 1985) (as a general matter, a motion under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal). Indeed, with the exception of ineffective assistance of counsel claims, a petitioner is typically barred from collaterally attacking his conviction or sentence using issues that could have been, but were not, brought on direct appeal. *See Frady*, 456 U.S. at 162-63. To overcome that bar, "a convicted defendant must show both (1) cause excusing his . . . default, and (2) actual prejudice resulting from the errors of which he complains." *Id.* at 167-68 (internal quotations omitted). If a petitioner fails to show either cause or prejudice, the claims at issue will be considered defaulted and thus denied. *See, e.g., United States v. Calhoun*, 600 F. App'x 842, 845 n.2 (3d Cir. 2015) (petitioner who failed to raise a claim on direct appeal "defaulted it"); *United States v. Thomas*, 286 F. App'x 779, 781 n.2 (3d

9

Cir. 2008) ("This issue could have been and should have been raised on direct appeal, but was not, and is waived."); *Thomas v. United States*, No. 09-5339, 2016 WL 3129614, at *3 (D.N.J. June 1, 2016) (enforcing procedural default in a § 2255 habeas matter when petitioner failed to raise claims on direct appeal); *Massaro v. United States*, 538 U.S. 500, 504 (2003) (ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."); *Davies*, 394 F.3d at 188 (same). Here, Petitioner has failed to demonstrate cause and prejudice in a manner sufficient to overcome this procedural bar, and the Court therefore finds that Grounds One, Two, Three, Four, and Eight are procedurally defaulted. Moreover, as discussed *infra*, these claims are also substantively without merit.

### b. The Record Fails to Show That the Government Improperly Withheld Evidence

In Grounds One, Two and Four, Petitioner claims that the Government refused to provide him with copies of certain audio/visual recordings produced using the covert surveillance recording equipment worn by confidential informant Sydney Trottman. (*See* Am. Pet. at Grounds One, Two and Four). Petitioner avers that the Government created DVD recordings from that equipment for the dates of July 15, 16, and 17, 2013, as well as and during certain additional debriefing sessions between Mr. Trottman and unspecified Government agents on unspecified dates. The record fails to in any way provide factual support for these assertions.

Prior to trial, on January 7, 2013, Paul J. Casteleiro – who at that time was still formally serving as Petitioner's counsel – filed an omnibus motion requesting, *inter alia*, "copies of all videos or DVDs made by the confidential informant [Sidney Trottman] during the course of the investigation of the alleged conspiracy involving [Petitioner] and his co-conspirators[.]" (*See* Criminal Docket at ECF No. 42, PageID: 67.) At the Court's March 12, 2013 pre-trial hearing

on Petitioner's omnibus motion, the parties informed the Court of the existence of thirteen DVDs produced from the covert surveillance equipment worn by Mr. Trottman. (Mar. 12, 2013 Hr'g Tr. 11-12, Criminal Docket at ECF No. 82.) That there were only thirteen DVDs produced is supported by Agent Karaminas's trial testimony that the Government produced DVDs only when Mr. Trottman actually *purchased* illegal firearms. (June 26, 2013 Trial Tr. 11.)

During the March 12th pre-trial hearing, Mr. Casteleiro indicated that Petitioner nonetheless believed "that there may be other DVDs outside of the nine of the thirteen that the Government's disclosed." (Mar. 12, 2013 Hr'g Tr. 12.) In response, the Government represented to the Court that it had "provided [Petitioner] with each of the DVDs that [Petitioner] is on, as well as the DVDs that any of his co-conspirators are on" and that it would also make the remainder of those thirteen DVDs available for Petitioner to view. (*Id.* at 32.) Based on the Government's representations at the March 12th hearing, the Court was – and remains – satisfied that the Government gave "[Petitioner] all the DVDs [in its possession]." (*Id.* at 24.) During sentencing, Petitioner appeared to himself acknowledge that no other DVDs existed. (*See* Sept. 18, 2013 Sentencing Tr. 10 (Petitioner noting that he "really had a thought that [there] was more evidence, which [there] obviously wasn't.").) As such, the underlying factual allegations upon which Grounds One, Two, and Four are premised, *i.e.*, that there are additional audio/visual recordings which the Government never produced, is controverted by the evidence of record.

The factual assertions underlying Petitioner's Ground Three and Ground Eight claims likewise appear to lack any record support. Indeed, Petitioner fails to point to any record evidence – and the Court is not independently aware of any – which supports his otherwise unsubstantiated factual assertions that the Government improperly withheld information about:

11

(i) the arrest of Mark McCargo (*see* § 2255 Mot. at Ground Eight); and (ii) the relocation of Mr. Trottman to the same street Petitioner lived on. (*See id.* at Ground Three.)

### c. Even if the Record Provided Support for the Factual Assertions Underlying Petitioner's Ground One, Two, Three, Four, and Eight Arguments, Those Claims Would Still Fail to Provide a Basis to Grant Habeas Relief

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held "that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 86. Under *Brady*, the Government bears an "affirmative duty to disclose [material] evidence favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady*, 373 U.S. 83). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999), the Supreme Court clarified that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82; *see also Fry v. Piller*, 551 U.S. 112, 116 (2007) (errors of even a constitutional dimension will be considered harmless and thus will not warrant habeas relief "unless [the alleged constitutional error] had a substantial and injurious effect or influence in determining the jury's verdict.").

In this case, the evidence introduced at trial inculpating Petitioner of the crimes for which he was tried was overwhelming. Even if the record provided support for Petitioner's otherwise unfounded assertion that the Government withheld audio/visual recordings which are relevant to

12

his case – and it does not – Grounds One, Two, and Four of Petitioner's § 2255 Motion – each of which are based on this factually unsupported premise – would fail to provide a basis for the Court to grant Petitioner habeas relief because it is clear that the existence of such evidence would not have impacted the outcome of Petitioner's trial to a reasonable probability. *Bagley*, 473 U.S. at 682.

The same can be said of Petitioner's claims that the Government improperly withheld information about: (i) the arrest of Mark McCargo (*see* § 2255 Mot. at Ground Eight) and; (ii) the relocation of Sydney Trottman to Petitioner's street. (*Id.* at Ground Three.) Petitioner fails to cite to any persuasive legal authority which suggests that the Government was required to disclose this seemingly non-material information to him or that his constitutional rights were violated by the Government's failure to divulge that information. Instead, Grounds Three and Eight – like many of the other claims raised in his § 2255 Motion – appear to be rooted in Petitioner's legally incorrect understanding that because he sold guns to Sydney Trottman on three separate occasions only after being implored to do so by Mr. Trottman – who himself was attempting to purchase those weapons for the purpose of securing criminal convictions – Petitioner should have been acquitted of the specific gun trafficking and felon in possession charges for which he stood trial. Petitioner's belief, however, ignores the reality that regardless of Mr. Trottman's motives for purchasing those weapons, the evidence at trial demonstrated that Petitioner sold three guns to Mr. Trottman believing that those guns were being sold for use in a Jamaican drug war. Indeed, the evidence presented at trial demonstrating Petitioner's guilt with respect to the specific criminal charges set forth in the May 17, 2013 superseding indictment was overwhelming. Moreover, the jury declined to find that Petitioner was entitled to an entrapment defense based on the actions taken by Mr. Trottman to foster those sales. Against this backdrop,

the Court is unable to understand how the Government's failure to disclose seemingly immaterial information about Mr. Trottman's relocation to Petitioner's street and about Mr. McCargo's arrest for selling firearms to Mr. Trottman *after* Petitioner himself sold three guns to Mr. Trottman could have altered the outcome of Petitioner's trial. *Bagley*, 473 U.S. at 682. For the reasons detailed above, Grounds One, Two, Three, Four, and Eight fail to provide a basis for the Court to grant Petitioner habeas relief.

### 3. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asserts that Paul J. Casteleiro, Esq. was ineffective because he: (i) failed to investigate and request audio/visual footage of debriefings between Mr. Trottman and unidentified Government agents (§ 2255 Mot. at Ground Five); (ii) failed to call Mark McCargo to testify (*id.* at Ground Six); and (iii) told Petitioner that the term reversible error "didn't mean anything of significance." (*Id.* at Ground Seven.)

#### a. Standard Governing Petitioner's Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner first "must show that counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Second, a petitioner must additionally demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

With respect to evaluating whether counsel's performance was deficient under *Strickland*, the "proper standard . . . is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 687-88). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Again, the habeas petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89).

Under *Strickland*, a habeas petitioner must also affirmatively demonstrate that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 692-93. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. A petitioner must instead demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (quoting *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999)). When the evidence of a petitioner's guilt was established by overwhelming evidence – as was the case at Petitioner's trial – a petitioner usually

15

cannot show that he was prejudiced by counsel's mistakes unless he can provide "a considerable amount of new, strong evidence to undermine" his conviction. *Id.*; *see also Copenhafer v. Horn*, 696 F.3d 377, 390 (3d Cir. 2012) ("[i]n light of the overwhelming evidence . . . we agree . . . that [the petitioner] cannot show he was prejudiced"). Furthermore, when a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," the petition is insufficient to warrant even an evidentiary hearing, let alone habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). For the reasons detailed below, Petitioner's ineffective assistance of counsel claims fail to provide a basis for the Court to award habeas relief to Petitioner.

### b. Counsel's Purported Failure to Call Mark McCargo to Testify

In Ground Six, Petitioner claims that Mr. Casteleiro was ineffective because he failed to call Mark McCargo to testify at trial. This assertion ignores several key facts of record. First, Petitioner was acting as his own attorney during the portion of the trial where the defense would call its own witnesses. Petitioner, then proceeding *pro se*, declined to call any witnesses. (*See* June 27, 2013 Trial Tr. 134 ("THE COURT: You're resting, okay. So you what that means, that's the end of the case as far as the taking of testimony. You understand that? THE DEFENDANT: Okay. Yes your Honor.").) The record makes clear that Petitioner, who was then representing himself at trial, made the decision to not call any defense witnesses. The Court therefore takes exception to Petitioner's efforts to incorrectly attribute Mr. McCargo's failure to testify to Mr. Casteleiro.

Second, as noted above, Mark McCargo disavowed knowing Petitioner during his plea colloquy to this Court in Mr. McCargo's separate criminal matter. It is therefore entirely unclear to the Court what testimony could have been elicited from Mr. McCargo during Petitioner's trial

16

that would have been relevant – much less favorable – to Petitioner's defense. This is particularly true because Petitioner has not submitted an affidavit from Mr. McCargo or any similar compelling evidence demonstrating the information and facts Mark McCargo would have testified to had he been called as a witness. *See Lewis v. Horn*, 581 F.3d 92, 107 (3d Cir.2009) (faulting habeas petitioner for not presenting any affidavits describing what his alleged alibi witnesses would have testified about); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991) ("evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.") (citations omitted). Ultimately, Petitioner has failed to "make a specific, affirmative showing as to what the missing evidence would have been . . . and prove that this witness's testimony would have produced a different result." *Mayfield v. United States*, No. 11-2950, 2012 WL 664806, at *5 (D.N.J. Feb. 29, 2012) (quoting *Patel v. United States*, 19 F.3d 1231 (7th Cir. 1994). In light of the foregoing, the factually inaccurate and otherwise unsubstantiated claims presented in Ground Six of Petitioner's § 2255 Motion do not entitle Petitioner to habeas relief.

### c. Counsel's Alleged Response to Petitioner's Reversible Error Inquiry

In Ground Seven, Petitioner claims that Mr. Casteleiro rendered ineffective assistance because he informed Petitioner – at an unspecified date during unspecified proceedings – that that the term reversible error "didn't mean anything of significance." This assertion – even if true – fails to provide a basis to award habeas relief under *Strickland*. There is nothing about this statement that allows the Court to conclude that Mr. Casteleiro "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such a remark similarly fails to in any plausible way suggest that Petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Id*. Petitioner is therefore not entitled to habeas relief on this claim.

### d. Counsel's Purported Failure to Request Audio/Visual Recordings

In Ground Five, Petitioner claims that Mr. Casteleiro was ineffective because he did not request audio/visual recordings of – and otherwise failed to investigate – debriefing sessions between Mr. Trottman and other unspecified Government agents. Under *Strickland*, defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *Travillion*, 759 F.3d at 293 n.23 (internal quotations omitted); *see also United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (a complete absence of investigation is not a strategic choice made by counsel). To show prejudice that counsel conducted an incomplete investigation, a habeas petitioner:

> must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result."

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("the petitioner has the burden of providing the court with specific information as to what the investigation would have produced."); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

Initially, the Court notes that the facts underlying Petitioner's Ground Five claims are wholly contradicted by the evidence of record. Indeed, and as noted above, the record of

18

Petitioner's criminal proceedings makes clear that Mr. Casteleiro made significant efforts to obtain copies of *all* relevant audio/visual recordings produced from the covert surveillance equipment worn by Mr. Trottman. Mr. Casteleiro requested this evidence in the omnibus motion he filed with the Court on January 7, 2013. (Criminal Docket at ECF No. 42.) On March 12, 2013, the Court held a hearing during which it devoted significant attention to counsel's request for that specific evidence. (*See* Mar. 12, 2013 Hr'g Tr., Criminal Docket at ECF No. 82.) The transcript of that hearing makes clear that Mr. Casteleiro, through those efforts, did in fact obtain all such audio/visual recordings in the Government's possession. (*Id.*)

Moreover, the record makes clear that Mr. Casteleiro continued in his pursuit to obtain a plethora of other information and evidence from the Government that may have been useful to Petitioner's defense. (*See* Pet'r's May 6, 2013 Mot., Criminal Docket at ECF No. 53; May 27, 2013 Hr'g Tr., Criminal Docket at ECF No. 75.) Tellingly, in spite of the broad scope of information and documents sought in counsel's subsequent evidentiary requests, Mr. Casteleiro never again claimed that the Government failed to disclose additional audio/visual recordings in the Government's possession. (*Id.*) The record therefore clearly demonstrates: (i) that the Government produced all audio/visual recordings of Mr. Trottman's debriefings that it had in its possession; and (ii) that Mr. Casteleiro undertook significant efforts to obtain any and all evidence – including those audio/visual recordings – that may have been useful to Petitioner's defense.

In light of these undisputed facts, it is unsurprising that Petitioner has in no way convincingly shown that his defense would have benefitted in any tangible way through counsel's further investigation into additional audio/visual recordings in the Government's possession, to the extent any exist at all. Petitioner has similarly presented no reason for this

Court to conclude that further investigation would have produced a different result at Petitioner's trial. In light of these considerations, Petitioner is not entitled to habeas relief based on the claims raised in Ground Five.

## C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order denying habeas relief unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of Petitioner's habeas claims, the Court denies Petitioner a certificate of appealability.

## IV. CONCLUSION

Petitioner's Motion to Vacate, Correct, or Set Aside his sentence is denied. No certificate of appealability shall issue. An accompanying Order will be entered.

3 April 2019
Date

WILLIAM H. WALLS
U.S. District Judge